## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

            Plaintiff,

    v.

INBEV N.V./S.A.,

INBEV USA LLC d/b/a LABATT USA, and

ANHEUSER-BUSCH COMPANIES, INC.,

            Defendants.

Case:  1:08-cv-01965 (JR)

The Hon. James Robertson

**MEMORANDUM OF ANHEUSER-BUSCH INBEV N.V./S.A., INBEV USA LLC D/B/A LABATT USA AND ANHEUSER-BUSCH COMPANIES, INC. IN OPPOSITION TO THE *GINSBURG* PLAINTIFFS' MOTION TO INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(A)(2) AND (B)(1)**

Yvonne S. Quinn (admitted *pro hac vice*)
Julia M. Jordan (D.C. Bar No. 490333)
Bradley P. Smith (D.C. Bar No. 468060)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000 (telephone)
(212) 558-3588 (facsimile)

*Counsel for InBev N.V./S.A. n/k/a*
*Anheuser-Busch InBev N.V./S.A.,*
*InBev USA LLC d/b/a Labatt USA*
*and Anheuser-Busch Companies, Inc.*

January 29, 2009

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................... ii

PRELIMINARY STATEMENT .................................................................2

BACKGROUND ....................................................................................5

 A. The Status of InBev's Acquisition of Anheuser-Busch ..........................................5

 B. The DOJ's Investigation and This Tunney Act Proceeding ..................................6

 C. The *Ginsburg* Plaintiffs' Litigation in Missouri ....................................8

  1. The Nature of the *Ginsburg* Plaintiffs'
   Claims and Requested Relief ....................................8

  2. The Timeline of Proceedings in the *Ginsburg* Litigation ..........................8

  3. The *Ginsburg* Plaintiffs' Three Motions, Filed *Seriatim*,
   for a Preliminary Injunction, for Reconsideration
   and for a Hold Separate Order Are Denied ................................10

  4. The Current Status of the *Ginsburg* Litigation ........................................12

ARGUMENT ......................................................................................13

I. The *Ginsburg* Plaintiffs Have No
Right To Intervene under Rule 24(a)(2) ..........................................................14

II. The *Ginsburg* Plaintiffs Do Not Meet the Requirements
for Permissive Intervention under Rule 24(b)(1) ............................................17

CONCLUSION ......................................................................................23

# TABLE OF AUTHORITIES

(In accordance with Local Rule 7(a), the authorities on
which counsel chiefly rely are marked with asterisks below.)

Page

### CASES

*EEOC* v. *Nat'l Children's Ctr., Inc.*,
  146 F.3d 1042 (D.C. Cir. 1998) ......................................................................20

*Hobson* v. *Hansen*,
  44 F.R.D. 18 (D.D.C. 1968) ...........................................................................17

*Mass. Sch. of Law at Andover, Inc.* v. *United States*,
  118 F.3d 776 (D.C. Cir. 1997) .......................................................................16

*Tripp* v. *Executive Office of the President*,
  194 F.R.D. 344 (D.D.C. 2000) .......................................................................17

*United States* v. *Abitibi-Consolidated Inc.*,
  584 F. Supp. 2d 162 (D.D.C. 2008) ...............................................................19

*United States* v. *Airline Tariff Publishing Co.*,
  No. 92-2854 (GHR), 1993 WL 95486 (D.D.C. Mar. 8, 1993) ...............................22

*United States* v. *Associated Milk Producers, Inc.*,
  534 F.2d 113 (8th Cir. 1976) .........................................................................22

*United States* v. *AT&T Inc.*,
  541 F. Supp. 2d 2 (D.D.C. 2008) ...................................................................19

*United States* v. *Hartford-Empire Co.*,
  573 F.2d 1 (6th Cir. 1978) .............................................................................17

*United States* v. *LTV Corp.*,
  746 F.2d 51 (D.C. Cir. 1984) .....................................................................17, 22

*United States* v. *Microsoft Corp.*,
  56 F.3d 1448 (D.C. Cir. 1995) .......................................................................19

* *United States* v. *Microsoft Corp.*,
  No. 98-1232 (CKK), 2002 WL 319436 (D.D.C. Feb. 28, 2002) ...............13, 14, 15

* *United States* v. *Microsoft Corp.*,
  No. 98-1232 (CKK), 2002 WL 319139 (D.D.C. Feb. 28, 2002) ...............14, 17, 20

Page

\*   *United States* v. *SBC Commc'ns, Inc.*,
        489 F. Supp. 2d 1 (D.D.C. 2007) ..............................................................14, 16, 19

     *United States* v. *Siemens Corp.*
        621 F.2d 499 (2d Cir. 1980) ...............................................................................11

     *United States* v. *Stroh Brewery Co.*,
        No. 82-1059, 1982 WL 1852 (D.D.C. June 8, 1982) ............................................21

\*   *United States* v. *Stroh Brewery Co.*,
        No. 82-1059, 1982 WL 1861 (D.D.C. June 4, 1982) ............................................22

     *United States* v. *Thomson Corp.*,
        No. 96-1415, 1996 WL 554557 (D.D.C. Sept. 25, 1996) .................................14, 17


STATUTES, RULES AND ADMINISTRATIVE MATERIALS

15 U.S.C. § 16(a) ..............................................................................................................15

Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b) *et seq.* .......................................2, 7, 20

FED. R. CIV. P. 24 ............................................................................................... *passim*

Local Rule 5.1(j) ...............................................................................................................21

Local Rule 7(m) ................................................................................................................13

73 Fed. Reg. 71682-01 (Nov. 25, 2008) ............................................................................7

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

            Plaintiff,

     v.

INBEV N.V./S.A.,

INBEV USA LLC d/b/a LABATT USA, and

ANHEUSER-BUSCH COMPANIES, INC.,

            Defendants.

Case:  1:08-cv-01965 (JR)

The Hon. James Robertson

Defendants[1] oppose the motion to intervene in this Tunney Act proceeding filed by the plaintiffs in *Ginsburg, et al.* v. *InBev N.V./S.A., et al.* ("*Ginsburg*"), a private antitrust action that is pending in the United States District Court for the Eastern District of Missouri. Their inclusion as parties will add nothing to this proceeding but delay, which they concede is one of their primary goals.  The *Ginsburg* plaintiffs are pursuing entirely different antitrust claims than the United States, and entry of the Proposed Final Judgment by this Court will not have any impact on the proceedings in Missouri or the ten Missouri residents who are plaintiffs in that case.  The *Ginsburg* plaintiffs thus have no basis for intervening under Federal Rule of Civil Procedure 24.

---

[1]    Defendants are InBev N.V./S.A. ("InBev") n/k/a Anheuser-Busch InBev N.V./S.A.; InBev USA LLC ("IUSA") d/b/a Labatt USA; and Anheuser-Busch Companies, Inc. ("Anheuser-Busch").

## PRELIMINARY STATEMENT

On November 14, 2008, at the conclusion of a four-month investigation that began immediately upon InBev's July 13, 2008 announcement of its agreement to acquire Anheuser-Busch, the U.S. Department of Justice (the "DOJ") filed its complaint in this action. The DOJ's Section 7 claim[2] concerns three discrete metropolitan areas in upstate New York – Buffalo, Rochester and Syracuse – and alleges that eliminating competition between InBev's Labatt brands of beer[3] and Anheuser-Busch's brands would substantially reduce competition in those cities.  (*See* Complaint, Docket No. 1, filed Nov. 14, 2008 ("DOJ Compl.") ¶¶ 2-6.) Simultaneously with the filing of the complaint, the DOJ filed a Proposed Final Judgment ("PFJ"), to which the DOJ and defendants had already agreed as a means of promptly settling the case.  The PFJ requires InBev to divest the small Labatt beer business in the United States in order to resolve the DOJ's concerns regarding the Labatt brands' competition in Upstate New York.  Like any consent judgment submitted by the United States in a civil antitrust case, the PFJ is subject to review under the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b) *et seq.* (the "Tunney Act"), under which the sole question before this Court is whether entry of the PFJ "is in the public interest," 15 U.S.C. § 16(e)(1).

In contrast, the *Ginsburg* plaintiffs – ten residents of Missouri who drink Anheuser-Busch brands of beer – are proceeding against InBev and Anheuser-Busch solely on the theory that InBev's acquisition of Anheuser-Busch should have been halted *in its entirety* because InBev was a "potential" new nationwide entrant into the United States beer industry.

---

[2]     Section 7 of the Clayton Act, 15 U.S.C. § 18.

[3]     The Labatt brands of beer are brewed in Canada by an affiliate of InBev and imported into the United States by another InBev affiliate.  They find their greatest following in areas near the Canadian border.

The *Ginsburg* plaintiffs have repeatedly tried, but failed, to enjoin the acquisition.  Having lost every substantive motion that they have submitted to The Honorable Jean C. Hamilton in U.S. District Court for the Eastern District of Missouri and to the U.S. Court of Appeals for the Eighth Circuit, the *Ginsburg* plaintiffs now seek to have this Court review those same claims yet again, even though Judge Hamilton found that it was "overwhelmingly likely that plaintiffs cannot succeed on the merits of their case."[4]

The *Ginsburg* plaintiffs do not have a basis for intervention under Federal Rule of Civil Procedure 24(a) or (b).  In addition to immediately disqualifying themselves as intervenors under Rule 24 by seeking an extraordinary year's delay in this proceeding, the *Ginsburg* plaintiffs fail to articulate how this Court's review of the PFJ under the Tunney Act will have any impact on their private antitrust claims.  It will not.  The DOJ's complaint and the PFJ are focused on the *existing* competitive significance of Labatt brand beer in Buffalo, Rochester and Syracuse, New York.  The *Ginsburg* plaintiffs live in Missouri, not New York, and the *Ginsburg* case asserts an entirely different theory based upon alleged *potential* competition.  Given this divergence, this Court's review of the PFJ under the Tunney Act will not "impair or impede" the Missouri litigation, nor will this Court be called upon to resolve a question of law or fact that is "common" both to this case and to the *Ginsburg* action.  FED. R. CIV. P. 24(a)(2), (b)(1).

Rather than establishing a proper basis for intervening in this case, the *Ginsburg* plaintiffs spend most of their brief trying to entice this Court to take an interest in procedural, legal and factual questions that are squarely before Judge Hamilton and the Eighth Circuit.  First,

---

[4]    *See* Memorandum and Order, dated Nov. 18, 2008 ("*Ginsburg* Mem. and Order"), a copy of which is attached as Exhibit D to the Declaration of Yvonne S. Quinn, dated January 28, 2009 ("Quinn Decl.").

the *Ginsburg* plaintiffs seek to prioritize their case over the action brought by the United States in this Court by "requesting a stay of this action and requesting this court to refrain from signing" the PFJ until after the completion of a full "trial on the merits" in Missouri, which Judge Hamilton has scheduled to commence on February 1, 2010.[5]  The *Ginsburg* plaintiffs offer no authority whatsoever for the proposition that the settlement of a Government antitrust action should be delayed by a year – if not more – so that a private antitrust action alleging entirely different claims and pending in another jurisdiction can proceed to trial.

Second, the *Ginsburg* plaintiffs seek to transform this Tunney Act proceeding into a full-blown replica of their Missouri case, so that they can "challeng[e] the merger as being against public interest and illegal."  (Pls.' Mot. 1.)  But this reflects a fundamental misunderstanding of the purpose of proceedings under the Tunney Act.  The Tunney Act was not intended to provide third parties with a judicial forum in which to challenge a merger.  Rather the Tunney Act is designed to enable the Court to review a proposed consent decree and determine whether its operation as a settlement of particular antitrust claims asserted by the DOJ is in the public interest.  It would be wholly improper to expand the scope of this Tunney Act proceeding beyond the narrow question of whether the PFJ is in the public interest in order to encompass the *Ginsburg* plaintiffs' antitrust theories, which already are receiving close attention in the District Court in Missouri and in the Eighth Circuit.

Third, the *Ginsburg* plaintiffs complain that they have "powerful," "exceptional," and "extraordinary" evidence but are "precluded" from presenting it to the DOJ or this Court. (Pls.' Mot. 5-6.)  This complaint is misplaced.  The DOJ already has the "evidence" the

---

[5]     (Missouri United States District Court Plaintiffs' Motion To Intervene under Fed. R. Civ. Pro. 24(a)(2) and (b)(1), Docket No. 13, filed Jan. 15, 2009 ("Pls.' Mot.") 1, 4.)

*Ginsburg* plaintiffs refer to – including the allegedly "secret" yet "publicly announced" Import

Agreement between InBev and Anheuser-Busch (Pls.' Mot. 6, 7) – because the *Ginsburg*

plaintiffs have the same set of documents that had "been given to the government" during its

investigation.  (Pls.' Mot. 3.)  To the extent that the DOJ determines that any of these documents

bear on the Court's review of the PFJ, it can address them.  Moreover, the *Ginsburg* plaintiffs

have had ample opportunity to present their evidence to Judge Hamilton and to the Eighth

Circuit.  The fact that neither court has seen fit to grant the *Ginsburg* plaintiffs any of the relief

they have requested belies the assertion that they "have an exceedingly strong case for success

on the merits."  (Pls.' Mot. 5.)

Given the *Ginsburg* plaintiffs' failure to satisfy the requirements of Rule 24 or to

demonstrate any benefit that would result from their being allowed to intervene, their motion

should be denied.

## **BACKGROUND**

### A.      **The Status of InBev's Acquisition of Anheuser-Busch**

As counsel to InBev advised the Court when the parties appeared before Your

Honor on November 14, 2008, in light of the unfolding financial crisis gripping U.S. and global

economies and threatening some of the very institutions providing InBev's financing, InBev

intended to close its acquisition of Anheuser-Busch the following Tuesday, November 18, 2008.

Despite the *Ginsburg* plaintiffs' intimations to the contrary (*see* Pls.' Mot. 4), InBev's

acquisition of Anheuser-Busch did in fact close in New York City on November 18, 2008 – more

than two months ago.  At that time, InBev paid $50 billion in cash to Anheuser-Busch's

shareholders, many of whom have undoubtedly dissipated their proceeds either by reinvestment

or spending.  As in all modern-day acquisitions, InBev and Anheuser-Busch have moved quickly

to integrate the two companies (with the exception of the Divestiture Assets, as defined in the PFJ) to realize efficiencies and cost savings that were a key and publicly announced goal of the transaction.

### B. The DOJ's Investigation and This Tunney Act Proceeding

Shortly after the July 13, 2008 announcement of InBev's proposed acquisition of Anheuser-Busch, the DOJ began investigating the proposed transaction in accordance with its authority under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 18a.  As a matter of public record, the DOJ began its review of InBev's proposed acquisition against the backdrop and knowledge of having just completed, on June 5, 2008, an eight-month investigation concerning the joint venture between SABMiller plc and Molson Coors Brewing Company.[6]

At the conclusion of its four-month investigation into the competitive effects of InBev's acquisition of Anheuser-Busch, the DOJ filed its complaint in this action on November 14, 2008.  The DOJ alleged in its complaint that "the likely effect of the merger would be to lessen competition substantially in the market for beer in the metropolitan areas of Buffalo, Rochester, and Syracuse, New York, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18."  (Competitive Impact Statement, Docket No. 2, filed Nov. 14, 2008 ("CIS") 1; *see also* DOJ Compl. ¶¶ 24, 28.)  The DOJ did not allege any anticompetitive effects of the transaction outside of upstate New York.

Simultaneously with the filing of its complaint, the DOJ filed the Proposed Final Judgment, which, if entered by this Court, would settle the DOJ's claim under Section 7 of the

---

[6]     *See* Statement of the Department of Justice's Antitrust Division on Its Decision To Close Its Investigation of the Joint Venture Between SABMiller PLC and Molson Coors Brewing Company (June 5, 2008) (www.usdoj.gov/atr/public/press_releases/2008/233845.htm).

Clayton Act and bring this action to a close.  (*See* Proposed Final Judgment, Docket No. 1, Exhibit 2, filed Nov. 14, 2008.)  The PFJ requires InBev to "divest IUSA [– the entity that conducted the Labatt brand business in the U.S. –] and all of the real and intellectual property rights required to brew, promote, market, distribute, and sell Labatt brand beer for consumption in the United States."  (CIS 7; *see also* PFJ § IV.)  As the DOJ explained in its Competitive Impact Statement, the divestiture required by the PFJ "will preserve competition for the provision of beer in the relevant markets identified by the United States."  (CIS 11-12.)  Indeed, the PFJ provides *more than* complete relief for the claim brought by the DOJ, because InBev will be divesting itself of the Labatt brand beer business for the whole of the United States, even though the competitive concerns alleged by the DOJ were limited to Buffalo, Rochester, and Syracuse, New York.

Since filing the PFJ with the Court, the DOJ has proceeded with steps to comply with the Tunney Act's notice and public comment requirements.[7]  15 U.S.C. § 16(b)-(d).  Defendants understand that the deadline to submit comments is February 11, 2009, after which time the DOJ will respond in writing.  "The comments and the response of the United States will be filed with the Court and published in the Federal Register."  (CIS 11.)  Defendants anticipate that following the completion of these steps, the DOJ will move for entry of the PFJ, subject to this Court's review under the Tunney Act.

---

[7]     The DOJ has done so by (i) publishing the PFJ and the Competitive Impact Statement in the Federal Register, *see* 73 Fed. Reg. 71682-01 (Nov. 25, 2008), (ii) providing notice of the proposed settlement in a Washington newspaper, and (iii) thereby soliciting comments on the PFJ from the public.

**C.      The *Ginsburg* Plaintiffs' Litigation in Missouri**

       **1.      The Nature of the *Ginsburg* Plaintiffs' Claims and Requested Relief**

The *Ginsburg* plaintiffs are ten Missouri citizens who allege that they are "consumers and purchasers of Anheuser-Busch's beers" and will be harmed by InBev's acquisition of Anheuser-Busch through, among other things, higher prices for beer.[8]  Unlike the DOJ's focus on *existing* competition between Anheuser-Busch and InBev's Labatt brand in upstate New York, the *Ginsburg* complaint alleges a nationwide market and asserts liability under two "potential competition" theories.[9]  First, the *Ginsburg* plaintiffs allege that InBev was an "actual" potential competitor to Anheuser-Busch because InBev "will probably enter the United States market de novo."  (*Ginsburg* Compl. ¶ 139.)  Second, they allege that InBev was "perceived" by U.S. brewers as a "potential and actual entrant" and that this perception "has been an important consideration in the pricing and marketing decisions of Anheuser-Busch and other American brewers or importers in the United States."  (*Ginsburg* Compl. ¶ 15.)

The *Ginsburg* complaint sought an injunction to prevent InBev and Anheuser-Busch from "consummating their acquisition" and a declaration that InBev's acquisition "violates Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18."  (*Ginsburg* Compl., Prayer for Relief.)  The *Ginsburg* plaintiffs do not assert a claim for money damages.  (*Id.*)

       **2.      The Timeline of Proceedings in the *Ginsburg* Litigation**

Although InBev's proposed acquisition of Anheuser-Busch was announced on July 13, 2008, the *Ginsburg* plaintiffs waited nearly two months until September 10, 2008 to

---

    [8]      *See Ginsburg* Complaint ("*Ginsburg* Compl.") ¶¶ 3, 21, a copy of which is attached as Exhibit 1 to the Declaration of Theodore F. Schwartz, dated January 14, 2009; *see also* Pls.' Mot 2–3.

    [9]      *See*, *e.g.*, *Ginsburg* Compl. ¶¶ 12, 13, 15, 63, 64, 69, 139–41.

commence their litigation in Missouri in an effort to block the transaction.  They did not,

however, move for a preliminary injunction when they filed their complaint.

On October 6, 2008, defendants informed the *Ginsburg* plaintiffs that the

transaction could close as early as November 12,[10] and offered to discuss a "briefing schedule

that would lead to a [preliminary injunction] hearing no later than November 7."[11]  Also on

October 6, defendants agreed to produce to the *Ginsburg* plaintiffs the documents that previously

had been provided to the DOJ in connection with its review of the proposed transaction.  To

avoid delay, defendants offered to produce documents on October 17, if the *Ginsburg* plaintiffs

agreed to keep the documents confidential.  The *Ginsburg* plaintiffs agreed, stating:

> Plaintiffs agree to presently limit review of the Hart-Scott
> production to Attorneys' Eyes Only.  This means that until such
> time as the parties reach agreement on the Protective Order only
> Plaintiffs' counsel . . . would review this production.[12]

Later that same day, InBev and Anheuser-Busch produced approximately 400,000 electronic

document images to the *Ginsburg* plaintiffs.[13]

---

[10]     November 12, 2008 was the date on which the Anheuser-Busch shareholders met
to consider and vote on the approval of the merger with InBev.

[11]     Letter from James F. Bennett to Derek G. Howard dated October 6, 2008, a copy
of which is attached as Exhibit A to the Quinn Decl.

[12]     Letter from Derek G. Howard to William J. Snipes dated Oct. 17, 2008, a copy of
which is attached as Exhibit B to the Quinn Decl.

[13]     Despite their prior agreement, the *Ginsburg* plaintiffs have since filed a motion to
unseal the factual record in the *Ginsburg* case.  They incorrectly suggest that their ability to
provide the DOJ with comments on the PFJ has been hindered because of a "continuance"
requested by defendants in the *Ginsburg* case (a five day extension because the motion to unseal
was filed on Christmas Eve).  The motion to unseal the record in *Ginsburg* has been fully briefed
and could be decided by Judge Hamilton well before the February 11 deadline for submitting
comments on the PFJ to the DOJ.

Contrary to the *Ginsburg* plaintiffs' baseless accusations (*see* Pls.' Mot. 4), InBev and Anheuser-Busch were completely candid with Judge Hamilton that they intended to complete the acquisition as soon as the DOJ had completed its investigation. Accordingly, during an October 23, 2008 conference, Judge Hamilton told the *Ginsburg* plaintiffs that they needed to file "the motion [for a preliminary injunction] and a memorandum in support very swiftly, if [they] intend[ed] to get some kind of a hearing on this."[14] Judge Hamilton gave the *Ginsburg* plaintiffs until November 3, 2008 to file their motion but cautioned that waiting that long would push the briefing "way beyond the November 12th date which may be decisive in this . . . [and] may render a lot of this moot." (Oct. 23 Tr. 9:5–10.) Judge Hamilton urged the *Ginsburg* plaintiffs to "get realistic about the time frame here" and invited them to "file [their] motion more quickly." (*Id.* 9:17, 17:2.)[15] Despite Judge Hamilton's urging, the *Ginsburg* plaintiffs did not move for a preliminary injunction until November 3, 2008.

> **3.** **The *Ginsburg* Plaintiffs' Three Motions, Filed *Seriatim*, for a Preliminary Injunction, for Reconsideration and for a Hold Separate Order Are Denied**

On November 18, 2008, Judge Hamilton denied the *Ginsburg* plaintiffs' motion for a preliminary injunction.[16] Judge Hamilton found that the *Ginsburg* plaintiffs had failed to establish any of the factors that could support entry of a preliminary injunction – threat of

---

[14]     October 23, 2008 Transcript ("Oct. 23 Tr.") 8:19–21, a copy of which is attached as Exhibit C to the Quinn Decl.

[15]     During this October 23 conference, Judge Hamilton made clear that the depositions the *Ginsburg* plaintiffs mention in their intervention papers – certain InBev and Anheuser-Busch executives (Pls.' Mot. 3) – could take place only after the *Ginsburg* plaintiffs filed their preliminary injunction motion. (Oct. 23 Tr. 16:24–17:2.) Moreover, Judge Hamilton rebuffed the *Ginsburg* plaintiffs' effort to accelerate a permanent injunction: "That suggests a trial on the merits, and I don't think we've come anywhere close to that." (*Id.* 10:14–15.)

[16]     *See Ginsburg* Mem. and Order.

irreparable harm, balance of harms, the public interest, or likelihood of success.  (*Ginsburg* Mem. and Order 8-10.)

Judge Hamilton first addressed the merits of the case and rejected the *Ginsburg* plaintiffs' "actual potential competition" theory.  She found that "InBev not only was not poised to enter the United States beer market, but had instead taken steps to extract itself from the market" and "InBev's actions have demonstrated . . . that InBev did not intend to enter the U.S. beer market *de novo*" as the *Ginsburg* plaintiffs had alleged.  (*Ginsburg* Mem. and Order 4.) Judge Hamilton also concluded that "InBev's purported *de novo* entry into the United States beer market would be financially infeasible and unprofitable" because "[t]he evidence presented by InBev demonstrates that it would be extremely expensive and most likely unprofitable for it to compete in the United States" and "*de novo* entry is extremely unlikely where, as in the U.S. beer market, there is a 'stable market or one expanding at a comparatively glacial pace.'"  (*Id.* 5–6 (quoting *United States* v. *Siemens Corp.* 621 F.2d 499, 507 (2d Cir. 1980)).)

Judge Hamilton also rejected the *Ginsburg* plaintiffs' "perceived potential competition" theory.  Judge Hamilton found that the *Ginsburg* plaintiffs "have offered no proof that any current beer producer or distributor views InBev as a potential entrant into the United States beer market."  (*Ginsburg* Mem. and Order 6.)  The evidence showed that "InBev's current position as a 'perceived potential competitor' or 'actual potential competitor' does not affect the U.S. beer market," and "InBev's presence on the periphery of the market does not affect Anheuser-Busch's competitive behavior."  (*Id.* 5 (quotation omitted).)

Judge Hamilton held that the *Ginsburg* plaintiffs had failed to show a threat of irreparable harm because "[a]ny speculation as to potential increases in beer prices is too remote to warrant injunctive relief."  (*Id.* 9 (quotation omitted).)  Judge Hamilton found that "Anheuser-

Busch shareholders would be harmed by any delay in receiving the premium payment InBev is

offering" and because the *Ginsburg* plaintiffs "have neither posted, nor offered to post any type

of bond . . . [t]he risk of harm weighs greatly in favor of Defendants." (*Id.* 10.)  She also found

that the public interest weighed in favor of denying injunctive relief because "Plaintiffs have

failed to demonstrate that there will be any real, palpable harm to [them.]" (*Id.*)

Judge Hamilton was not persuaded by the *Ginsburg* plaintiffs' "conclu[sions],

with no supporting citation" and "reluctance [*i.e.*, complete failure] to provide any expert support

for their claims." (*Ginsburg* Mem. and Order 6 & n.3.)  Judge Hamilton summarized her ruling

as follows:

> In sum, this Court views Plaintiffs' characterization [of InBev] as a
> perceived potential or actual competitor in the U.S. beer market as
> purely speculative and the evidence presented is insufficient to
> warrant granting Plaintiffs' Motion for Preliminary Injunction or
> holding a hearing regarding their Motion. . . .  Thus, the evidence
> presented demonstrates that *it is overwhelmingly likely that
> Plaintiffs cannot succeed on the merits of their case* and Plaintiffs'
> Motion for Preliminary Injunction is denied.

(*Id.* 7-8 (emphasis added).)  InBev's acquisition of Anheuser-Busch closed on November 18, the

same day as Judge Hamilton's denial of the *Ginsburg* plaintiffs' preliminary injunction motion.

The *Ginsburg* plaintiffs filed a motion for reconsideration on November 20 and a

"motion to hold defendants' assets separate" on November 26.  Judge Hamilton denied both

motions in one-page orders.[17]

### 4.     The Current Status of the *Ginsburg* Litigation

The *Ginsburg* plaintiffs continue their action in the Eastern District of Missouri.

Judge Hamilton has established a schedule for discovery and other pretrial matters and has

---

[17]     *See* Order dated Dec. 17, 2008 and Order dated Dec. 30, 2008, copies of which
are attached as Exhibits E and F to the Quinn Decl.

scheduled a trial to commence on February 1, 2010.  Defendants intend to file dispositive

motions to dismiss the case prior to trial.  In addition, the *Ginsburg* plaintiffs filed a Notice of

Appeal on January 19, 2009, purporting to appeal Judge Hamilton's orders denying their motion

for preliminary injunction, motion for reconsideration, and "motion to hold defendants' assets

separate."[18]  On January 20, 2009, the *Ginsburg* plaintiffs filed an "Emergency Motion for

Injunction Pending Appeal" with the Eighth Circuit.  The Eighth Circuit summarily denied that

motion on January 26, 2009.[19]

## ARGUMENT

The *Ginsburg* plaintiffs filed the instant motion on January 15, 2009, without first

conferring with defendants as is required by Local Rule 7(m).  Defendants strongly oppose the

motion to intervene.

The *Ginsburg* plaintiffs seek to intervene in this case pursuant to Federal Rule of

Civil Procedure 24(a)(2) and (b)(1), arguing that under these provisions "anyone may intervene

in an action."  (Pls.' Mot. 5.)  This is not correct.  Rule 24 – and the caselaw interpreting it –

requires a putative intervenor to satisfy specific criteria in order to show that intervention is

appropriate in the particular circumstances of a case.  A "[f]ailure to satisfy any one" of the

required factors "is a sufficient ground for denying intervention."  *United States* v. *Microsoft

Corp.*, No. 98-1232 (CKK), 2002 WL 319436, at *1 (D.D.C. Feb. 28, 2002).  The *Ginsburg*

plaintiffs utterly fail to make a showing sufficient to support intervention in this case either as of

right or by permission.

---

[18]     *See* Notice of Appeal dated Jan. 19, 2009, a copy of which is attached as
Exhibit G to the Quinn Decl.

[19]     *See* Order dated Jan. 26, 2009, a copy of which is attached as Exhibit H to the
Quinn Decl.

I.      **The *Ginsburg* Plaintiffs Have No Right To Intervene under Rule 24(a)(2).**

It is well settled that "there is no absolute right to intervene in Tunney Act proceedings." *United States* v. *Microsoft Corp.*, No. 98-1232 (CKK), 2002 WL 319139, at *2 n.1 (D.D.C. Feb. 28, 2002).[20]  Instead, determining whether intervention as of right is appropriate requires consideration of the following four factors set out in Rule 24(a)(2):

> (1) the timeliness of the motion;
>
> (2) whether the movant "claims an interest relating to the property or transaction that is the subject of the action;"
>
> (3) whether the applicant "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest;" and
>
> (4) whether "existing parties adequately represent" the movant's interest.[21]

While defendants do not challenge the timeliness of the motion to intervene – the first element of Rule 24(a)(2) – it is clear that the *Ginsburg* plaintiffs do not satisfy any of the remaining three factors required for intervention as of right.

As to the second element of Rule 24(a)(2), the *Ginsburg* plaintiffs do not have an interest in the "subject of th[is] action." FED. R. CIV. P. 24(a)(2).  To be clear, the subject of this action is whether the PFJ should be entered by the Court as an appropriate remedy for the DOJ's claim that InBev's acquisition of Anheuser-Busch will reduce competition between Labatt brand beer and Anheuser-Busch brand beer in Buffalo, Rochester, and Syracuse, New York.  The

---

[20]      S*ee also United States* v. *SBC Commc'ns, Inc.*, 489 F. Supp. 2d 1, 10 (D.D.C. 2007) ("The Court is not required . . . to permit anyone to intervene."); *United States* v. *Thomson Corp.*, No. 96-1415, 1996 WL 554557, at *2 (D.D.C. Sept. 25, 1996) ("[I]t is clear from the language of the Tunney Act, its legislative history and the case law that there is no right to intervene.").

[21]      FED. R. CIV. P. 24(a)(2); *see also Microsoft*, 2002 WL 319436, at *1 (citing FED. R. CIV. P. 24(a)(2)).

*Ginsburg* plaintiffs have never claimed an interest in the competition between Labatt beer brands and Budweiser brands in upstate New York – nor would it make any sense for a group of Missouri beer drinkers to claim such an interest.

Instead, the subjects in which the *Ginsburg* plaintiffs assert an interest are (i) whether InBev was poised to enter as a potential new nationwide competitor in the U.S. beer industry and (ii) whether an Import Agreement described in their papers was "a facial *per se* violation of Section 1 of the Sherman Act."  (Pls.' Mot. 7.)  These subjects appear nowhere in the DOJ's complaint and are not before this Court.  As a result, they bear no relation to the discrete question concerning entry of the PFJ under the Tunney Act.  The *Ginsburg* plaintiffs' more general "interest in enforcing the antitrust laws and maintaining free competition" (Pls.' Mot. 13), also provides no basis for intervention as of right.  Indeed, their motion papers contain "no elaboration regarding the exact nature of [their] purported interest or interests" that would distinguish them from any other member of the public.  *Microsoft*, 2002 WL 319436, at *2.

As to Rule 24(a)(2)'s third element, regardless of the subjects the *Ginsburg* plaintiffs assert they are interested in, the proceedings in this case will not affect them one way or the other.  As the DOJ explains in its Competitive Impact Statement:

> Entry of the proposed Final Judgment will neither impair nor assist the bringing of any private antitrust damage action.  Under the provisions of Section 5(a) of the Clayton Act, 15 U.S.C. § 16(a), the proposed Final Judgment has no *prima facie* effect in any subsequent private lawsuit that may be brought against the Defendants.

(CIS 10.)

Under 15 U.S.C. § 16(a), "consent judgments" like the PFJ are expressly excluded from having any *prima facie* effect in private antitrust litigation.  This Court's evaluation of the PFJ under the Tunney Act thus will in no way "impair or impede" the *Ginsburg* plaintiffs' ability

- 15 -

to pursue their own litigation in Missouri.  FED. R. CIV. P. 24(a)(2).  The *Ginsburg* plaintiffs

undoubtedly are aware of this, because they do not argue that entry of the PFJ will affect their

private antitrust claims.  They remain free to proceed with their claims in Missouri, which will be

decided by Judge Hamilton and the Eighth Circuit.

Finally, as to the fourth element of Rule 24(a)(2), the *Ginsburg* plaintiffs make

absolutely no showing that their interests are being inadequately represented.  *Ad hominem*

attacks on the DOJ (*see* Pls.' Mot. 11-12) are hardly persuasive in a case where the DOJ has

undertaken a substantial investigation, has commenced litigation and has obtained from InBev a

divestiture remedy that is even broader than the anticompetitive concerns identified in the DOJ's

complaint.  It seems that the *Ginsburg* plaintiffs' true gripe is that the DOJ should have brought a

different case altogether – *i.e.*, one that went beyond upstate New York and alleged that InBev's

acquisition of Anheuser-Busch was unlawful in other ways.  But it is not the *Ginsburg* plaintiffs'

prerogative to second-guess the prosecutorial decisions made by the DOJ.  Indeed, in this

Tunney Act proceeding, "the Court cannot reject the proposed settlements merely because the

government failed to address antitrust issues not raised in its complaints."  *SBC*, 489 F. Supp. 2d

at 17; *see also Mass. Sch. of Law at Andover, Inc.* v. *United States*, 118 F.3d 776, 781 (D.C. Cir.

1997) (representation is not inadequate "just because a would-be intervenor is unable to free-ride

as far as it might wish").  Accordingly, the fact that the *Ginsburg* plaintiffs are pursuing private

litigation where they have asserted claims that are drastically different from those alleged by the

DOJ does not mean that they or any other members of the public are inadequately represented

with respect to the claims the DOJ did bring – the only subject of this proceeding.

## II.    The *Ginsburg* Plaintiffs Do Not Meet the Requirements
for Permissive Intervention under Rule 24(b)(1).

The *Ginsburg* plaintiffs also do not satisfy any of the standards for permissive

intervention under Rule 24(b).  A proposed intervenor by permission must "show that (1) it has

questions of law and fact in common with the anchoring suit and (2) intervention will not cause

undue delay or prejudice for the original parties."[22]  Moreover, in exercising its discretion, the

Court should bear in mind that a "'private party generally will not be permitted to intervene in

government antitrust litigation absent some strong showing that the government is not vigorously

and faithfully representing the public interest.'"[23]  Under these standards, the *Ginsburg* plaintiffs

should not be permitted to intervene.

As to the first requirement for permissive intervention, the *Ginsburg* plaintiffs

force the Court to guess as to what they are asserting to be common questions of fact or law.

The *Ginsburg* plaintiffs did not comply with Rule 24's requirement that a motion to intervene

"be accompanied by a pleading that sets out the claim or defense for which intervention is

sought."[24]  The failure of the *Ginsburg* plaintiffs to file the pleading required by Rule 24(c)

---

[22]     *Microsoft*, 2002 WL 319139, at *2; *see also* Fed. R. Civ. P. 24(b)(3) ("[T]he court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.").

[23]     *United States* v. *LTV Corp.*, 746 F.2d 51, 54 n.7 (D.C. Cir. 1984) (*quoting United States* v. *Hartford-Empire Co.*, 573 F.2d 1, 2 (6th Cir. 1978)); *see also Thomson*, 1996 WL 554557, at *2 ("discretionary intervention under the Tunney Act is usually denied in the absence of a showing that the government is not vigorously and faithfully representing the public interest, that it was unduly influenced or that it exercised bad faith or malfeasance in reaching the proposed final judgment.").

[24]     FED. R. CIV. P. 24(c); *see also Tripp* v. *Executive Office of the President*, 194 F.R.D. 344, 346 (D.D.C. 2000) (motion to intervene is "procedurally defective" when not accompanied by separate pleading required by Rule 24(c)); *Hobson* v. *Hansen*, 44 F.R.D. 18, 25 (D.D.C. 1968) (failure to include "separate pleading" may be "fatally defective" to motion to intervene).

amounts to more than a procedural misstep – it is further evidence that they cannot satisfy the substantive requirements of Rule 24.  The Court can fairly infer from the absence of the requisite pleading that the *Ginsburg* plaintiffs cannot specify any common claims that would justify their intervention.

With or without that inference, there are in actuality no common questions of fact or law between this case and the *Ginsburg* case.  Indeed, apart from this action and the *Ginsburg* litigation both being brought originally under Section 7 of the Clayton Act, the two cases could not be more different.  At a factual level, this case relates to the competition between Labatt and Budweiser beer brands in upstate New York, while the *Ginsburg* case concerns whether InBev was poised to become a full-blown competitor to Anheuser-Busch across the United States.  The *Ginsburg* complaint has nothing to do with Labatt beer or upstate New York; just as the DOJ's complaint alleges nothing about whether InBev was a potential nationwide *de novo* entrant.

The *Ginsburg* plaintiffs make much of the Import Agreement in their papers.[25] (*See* Pls.' Mot. 6-8.)  But this is a red herring in every sense.  The Import Agreement, which was provided to the DOJ in connection with its review of the transaction, has nothing to do with the PFJ.  Indeed, as the *Ginsburg* plaintiffs concede (*see* Pls.' Mot. 7), the Import Agreement did not cover the Labatt brands and did not affect the continued competition between the Labatt brands and the Anheuser-Busch brands in upstate New York.  Similarly, the discussion of Anheuser-Busch's securities disclosure litigation (*see* Pls.' Mot. 8), and the recitation of various Missouri

---

[25]     Prior to, and independent of the merger, Anheuser-Busch and InBev on November 30, 2006, entered into a long-term agreement whereby Anheuser-Busch became the exclusive importer of certain brands of beer brewed by InBev in Europe.  The contract specifically excluded Labatt, which is a Canadian brand.

politicians' views of a transaction involving a major Missouri-headquartered company (*see* Pls.'
Mot. 14-16), also do not identify common questions of law or fact.

The legal questions at issue here and in *Ginsburg* are also very different.  In this
Tunney Act proceeding, the Court is not being asked to try the United States' underlying
complaint but instead is asked solely to assess whether entry of the PFJ is in the "public interest"
– an inquiry that is "sharply proscribed by precedent and the nature of Tunney Act proceedings."
*SBC*, 489 F. Supp. 2d at 11.  Although the *Ginsburg* plaintiffs plainly would like to expand this
proceeding into a full-blown Section 7 case, this Court "is not tasked with deciding whether"
InBev's acquisition of Anheuser-Busch "as a whole run[s] afoul of the antitrust laws, nor
whether [the acquisition is] altogether in the public interest."  *Id.* at 3.  Rather, the "only question
facing this Court, under the procedures crafted by Congress, is whether the divestiture[] agreed
upon by the merging parties and the Department of Justice" is in the public interest.  *Id.*  In
making this assessment, the Court "cannot look beyond the [DOJ's] complaint in making the
public interest determination unless the complaint is drafted so narrowly as to make a mockery
of judicial power."  *Id.* at 15; *see also id.* at 17 ("This Court instead will approve the proposed
settlements if they are 'within the reaches of the public interest.'") (quoting *United States* v.
*Microsoft*, 56 F.3d 1448, 1458 (D.C. Cir. 1995)).[26]  In contrast, in the *Ginsburg* litigation, the
parties are litigating whether the elimination of InBev as an alleged "potential" competitor in the

---

[26]     *See also United States* v. *Abitibi-Consolidated Inc.*, 584 F. Supp. 2d 162, 165
(D.D.C. 2008) ("This Court 'is not permitted to reject the proposed remedies merely because the
court believes other remedies are preferable.'") (quoting *SBC*, 489 F. Supp. 2d at 15); *United
States* v. *AT&T Inc.*, 541 F. Supp. 2d 2, 6 (D.D.C. 2008) ("[T]he government is entitled to 'broad
discretion to settle with the defendant within the reaches of the public interest.'") (quoting
*Microsoft*, 56 F.3d at 1461).

U.S. beer industry has violated Section 7 of the Clayton Act.  That legal question plainly is not before this Court.

When invoked properly, permissive intervention can "advance[] the 'apparent goal of disposing of related controversies together.'"  *Microsoft*, 2002 WL 319139, at *2 (quoting *EEOC* v. *Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998)).  Yet, there is no suggestion in the *Ginsburg* plaintiffs' papers that permitting them to intervene will enable this Court to resolve a legal or factual issue that is currently before Judge Hamilton.  Nor is Judge Hamilton being called upon to resolve a question regarding the PFJ.  The dissimilarity between this case and *Ginsburg* thus eliminates any possibility of efficiency as a justification for permitting the *Ginsburg* plaintiffs to intervene.

The only common, but irrelevant, feature of this proceeding and *Ginsburg* is that defendants agreed, at the request of the *Ginsburg* plaintiffs, to produce in the *Ginsburg* action a copy of the same set of documents that were given to the DOJ during its investigation.  (*See* Pls.' Mot. 3.)  Seizing on this fact, the *Ginsburg* plaintiffs state that they will "be filing public comments" with the DOJ concerning the PFJ but complain that they are hobbled by an inability to submit "pertinent evidence regarding the legality and the public interest of the merger."  (Pls.' Mot. 1, 3.)  This is incorrect.

First, the Tunney Act does not contemplate that comments provided by the public concerning a proposed final judgment will be based upon the documents and evidence analyzed by the DOJ in determining the nature and extent of the claims that the DOJ would bring.  *See* 15 U.S.C. § 16(b)-(d) (identifying specific information DOJ must make public in Tunney Act proceeding).  The fact that the *Ginsburg* plaintiffs requested and obtained as document discovery in their action the very same documents that were previously produced to DOJ does not mean

that the *Ginsburg* plaintiffs are entitled to use the Tunney Act as a vehicle for making arguments before this Court that they already are making before Judge Hamilton in Missouri.

Second, to the extent that the *Ginsburg* plaintiffs wish to complain about the Import Agreement (*see* Pls.' Mot. 6, 7), they can do so without disclosing publicly the contents of the agreement because the document already was produced to the DOJ in connection with its review of the transaction.  Every document produced by defendants to the DOJ – and subsequently to the *Ginsburg* plaintiffs – was tagged with a document identification number, which would enable the *Ginsburg* plaintiffs to identify with precision any documents they believe contain information that should be considered by the DOJ without publicly disclosing the contents of the identified documents.  The *Ginsburg* plaintiffs can thereby provide comments to the DOJ without violating the confidentiality protections to which they previously agreed, and the DOJ can address those comments and provide confidential information to the Court, if appropriate, in accordance with this Court's well-established protocols for filing confidential information under seal.  *See* Local Rule 5.1(j) (sealed or confidential documents).  As a result, "[t]he comment procedures of the Tunney Act are adequate to permit [the *Ginsburg* plaintiffs] a full and fair opportunity to present their views on relevant antitrust considerations bearing upon entry of the proposed final judgment."  *United States* v. *Stroh Brewery Co.*, No. 82-1059, 1982 WL 1852, at *2 (D.D.C. June 8, 1982).

As to the second requirement for permissive intervention – the avoidance of unnecessary delay – the *Ginsburg* plaintiffs utterly fail:  they have announced that *one of their primary goals is to delay* this proceeding, having explicitly stated that they wish to intervene for the purpose of seeking a "stay of this action" until after a full trial on the merits of entirely different claims has been completed in Missouri – a trial not scheduled to begin until February 1,

2010.  (Pls.' Mot. 1, 4.)  This unprecedented request should prompt the Court to deny summarily the motion to intervene, as it is wholly inconsistent with Rule 24(b)(3), which cautions against permitting intervention that will "unduly delay or prejudice the adjudication of the rights of the original parties."  *See also United States* v. *Airline Tariff Publishing Co.*, No. 92-2854 (GHR), 1993 WL 95486, at *1 (D.D.C. Mar. 8, 1993) (denying motion for permissive intervention when adding parties "could result in undue delay").  InBev is actively moving forward with the divestiture called for by the PFJ.  To delay completion of the divestiture process by a year or more would be highly prejudicial both to InBev and to the prospective acquirer of the divestiture assets who would both face pointless uncertainty.  And even if the *Ginsburg* plaintiffs were not seeking to stay this action, their participation as intervenors risks unnecessarily distracting the parties and delaying the adjudication of this matter by the Court.

Lastly, there is no basis for any assertion here that the DOJ has failed to act as a diligent representative of the public.  The DOJ has obtained a remedy here that goes beyond the actual wrong alleged in the complaint, and the procedures of the Tunney Act further ensure that entry of the PFJ is in the public interest.  These facts provide additional weight to justify denying the *Ginsburg* plaintiffs' motion to intervene.  *See United States* v. *Stroh Brewery Co*., No. 82-1059, 1982 WL 1861, at *3 (D.D.C. June 4, 1982) (noting "the strict standard generally applicable to intervention in government antitrust consent decree cases," under which "'[b]ad faith or malfeasance on the part of the Government in negotiating and accepting a consent decree must be shown before intervention will be allowed'") (quoting *United States* v. *Associated Milk Producers, Inc*., 534 F.2d 113, 117 (8th Cir. 1976)); *LTV Corp.*, 746 F.2d at 54.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court deny the

*Ginsburg* plaintiffs' motion to intervene.

Dated: New York, New York
      January 29, 2009

Respectfully submitted,

/s/ Yvonne S. Quinn
Yvonne S. Quinn (admitted *pro hac vice*)
/s/ Julia M. Jordan
Julia M. Jordan (D.C. Bar No. 490333)
/s/ Bradley P. Smith
Bradley P. Smith (D.C. Bar No. 468060)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000 (telephone)
(212) 558-3588 (facsimile)

*Counsel for InBev N.V./S.A. n/k/a*
*Anheuser-Busch InBev N.V./S.A.,*
*InBev USA LLC d/b/a Labatt USA*
*and Anheuser-Busch Companies, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of January 2009, I caused true and correct

copies of the (i) Memorandum of Anheuser-Busch InBev N.V./S.A., InBev USA LLC d/b/a

Labatt USA and Anheuser-Busch Companies, Inc. in Opposition to the *Ginsburg* Plaintiffs'

Motion To Intervene under Federal Rule of Civil Procedure 24(a)(2) and (b)(1), and

(ii) Affidavit of Yvonne S. Quinn (and accompanying exhibits), to be served on:

Mitchell H. Glende, Esq.
U.S. Department of Justice, Antitrust Division
1401 H Street, N.W.
Suite 4000
Washington, D.C. 20530
(Via U.S. Mail)

Joshua H. Soven, Esq.
Chief, Litigation Section I
U.S. Department of Justice, Antitrust Division
1401 H Street, N.W.
Suite 4000
Washington, D.C. 20530
(Via U.S. Mail)

Theodore F. Schwartz
Law Offices of Theodore F. Schwartz
230, South Bemistan
Suite 1010
Clayton, Missouri 63105-1913
(Via U.S. Mail)

I further certify that true and correct copies of the foregoing were served via the

Court's ECF system upon all counsel registered for ECF in this case.

/s/ Stanley Roberts
Stanley Roberts